947 F.2d 942
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Leo V. STEWART, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-1862.
 United States Court of Appeals, Fourth Circuit.
 Argued July 29, 1991.
Decided Nov. 5, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Glen E. Conrad, Magistrate Judge. (CA-89-979-R)
 Argued: Arthur E. Neubauer, Roanoke, Va., for appellant; Robert S. Drum, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa., for appellee.
 On Brief: Eileen Bradley, Chief Counsel, Region III, William B. Reeser, Supervisory Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa., E. Montgomery Tucker, United States Attorney, Ray B. Fitzgerald, Jr., Assistant United States Attorney, Roanoke, Va., for appellee.
 W.D.Va.
 REVERSED AND REMANDED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Leo Stewart appeals a summary judgment affirming the denial of his social security disability claim. We must decide whether the administrative law judge (ALJ)'s finding that Sullivan was engaged in "substantial gainful activity" at the time his disability insured status expired is supported by substantial evidence. 42 U.S.C. § 405(g). Because we conclude that it is not so supported, we reverse and remand.
 
 I.
 
 2
 Claimant Leo Stewart was born in 1925. He operated a used car lot in Roanoke, Virginia, from 1956 until March, 1988. From 1956 to 1979, his income from the lot steadily increased. Thereafter, his earnings went into a sharp decline; from 1983 on, Stewart had no income from the lot, but nonetheless attempted to operate it. The remarkable change in fortune for Stewart's business coincided with the progressive effects of Parkinson's disease, with which he was diagnosed in 1978.
 
 
 3
 By 1984, a tremor in his left hand had made it difficult for him to write (he is left-handed). His walk was a slow shuffle from which he easily tired. His speech was slurred and difficult to understand. His head pulled to the right, and his expression was mask-like and unsmiling. Still he went to work each day.
 
 
 4
 He was not particularly successful there, though. He had to cut his hours back. Paperwork took him three to four times longer to fill out than before, and he still made mistakes. He would occasionally fall asleep in the presence of other persons.
 
 
 5
 In July, 1984, a neurological exam found limitation of upward gaze and reduction of facial expression. When Stewart walked, his left arm was rigid and would not swing. His left hand trembled constantly. He suffered from memory loss and had difficulties with calculation. One year later, in July, 1985, the neurologist reported that Stewart had more difficulty than before in getting out of a chair, his handwriting had worsened, and he was "making poor decisions" in his business. The neurologist suspected "mild dementia."
 
 
 6
 Another year brought steadily declining health. By July, 1986, Stewart's head turned when he spoke, he could not drive, and he found it difficult to work. The neurologist found that Stewart "could be considered disabled," and that his condition "will not improve." In August, 1986, the neurologist stated that, in addition to his previous impairments, Stewart was unable to perform fine motor movements or grasp and hold small objects.
 
 
 7
 A psychological evaluation performed that same month showed "extremely impaired" performance "on those tasks most vulnerable to brain damage," including tasks that "required planning skills and a systematic approach" to resolution. The clinical psychologist who performed the evaluation concluded that it is very likely that Mr. Stewart is experiencing severe difficulties in performing his current job of managing a used car business. Although his overall psychometric intelligence falls within the Normal Range, cognitive deficits displayed on the remainder of the battery would suggest that Mr. Stewart would have considerable difficulties with high-level skills required to successfully run a business. Furthermore, given this patient's current level of functioning and his age, it is very doubtful that he could be successfully trained for another occupation. On July 2, 1986, Stewart filed an application for disability insurance benefits. His claim was denied because he was allegedly engaged in substantial gainful activity. On December 15, 1986, his claim was denied on reconsideration. Stewart was not represented by an attorney at this time. On December 31, 1986, his disability insured status expired, because Stewart had gone so long without deriving any income from his "gainful" activity.
 
 
 8
 Another car dealer who knew Stewart and observed him during this time stated:
 
 
 9
 Regarding what his work activity would have been worth--if, for example, he did the work he was performing about the last three (3) years for someone such as myself--I don't think his work activity that I saw him do on his own lot would have been worth anything to anyone else. In fact I don't believe he could have gotten any kind of job on any other car lot no matter how simple.
 
 
 10
 Stewart continued to try to run his business through 1987; during that entire year, he sold only about thirty cars, and again lost money. He finally closed shop for good in March, 1988. He filed for disability again on April 12, 1988, alleging disability beginning March 1, 1988--well after the expiration date of his insured status. He later obtained counsel and was permitted to amend his application to allege disability from January 3, 1986. This application was denied after a hearing before an ALJ and on request for review by the Appeals Council. Stewart filed this action in district court, and the matter was referred by consent to a magistrate. The magistrate found that "it is just as reasonable as not that plaintiff's work activity as of December 31, 1986 was not substantial and gainful." However, the magistrate affirmed the denial of benefits. Stewart appeals.
 
 II.
 
 11
 Even if a disability claimant's medical condition renders him "disabled," benefits may be denied if he is engaged in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). The Secretary's regulations define "substantial gainful activity" for self-employed persons (20 C.F.R. § 404.1575):
 
 
 12
 (a) If you are a self-employed person. We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone since the amount of income you actually receive may depend upon a number of different factors like capital investment, profit sharing agreements, etc. We will generally consider work that you are forced to stop after a short time because of your impairment as an unsuccessful work attempt and your income from that work will not show that you are able to do substantial gainful activity. We will evaluate your work activity on the value to the business of your services regardless of whether you receive an immediate income for your services. We consider that you have engaged in substantial gainful activity if--
 
 
 13
 (1) Your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood;
 
 
 14
 (2) Your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) [$300/month] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing; or
 
 
 15
 (3) You render services that are significant to the operation of the business and receive a substantial income from the business.
 
 
 16
 The Secretary concedes that Stewart's activity was not comparable to unimpaired individuals, so (1) above does not render it substantial and gainful. Similarly, (3) cannot defeat Stewart's claim, because he did not derive any income from his business after 1982.
 
 
 17
 The issue then devolves to whether substantial evidence supports the Secretary's finding that Stewart's services were worth $300 per month, "when considered in terms of its value to the business." The only direct evidence on this point favors Stewart. A fellow car dealer stated that Stewart's services would not have been worth anything to any other dealer. The neurological and psychological tests performed in 1986 document "severe" deficiencies in the cognitive skills needed to run a business. Stewart also has circumstantial and inferential evidence on his side. Though, as the Secretary never tires of pronouncing, lack of income is not necessarily determinative, five years of zero income from a previously and consistently successful man, corresponding with the progressive effects of a debilitating disease, is potent evidence that Stewart's activity was not gainful during this period.
 
 
 18
 The ALJ relied on Stewart's statement on work activity reports he filled out in 1986 that attributed his business downturn to a bad economy instead of disability. Stewart counters that he did not know what was happening to him at the time, and suggests that a proud, hardworking man might blame the economy rather than his own declining judgment and abilities. In any event, Stewart's "admission" that the economy was bad does not make it so. He points out that the severe nationwide recession of the early 1980s ended in 1982--the last year he made a profit. Stewart's bad years occurred while the economy of the nation expanded. See Trevino v. United States, 804 F.2d 1512, 1518 (9th Cir.1986) (" '[T]he 1974-1982 period [was] the most recession-plagued nine years since the Great Depression,' " quoting Formuzis & Pickersgill, present Value of Economic Loss, Trial, Feb. 1985, at 22, 23), cert. denied, 484 U.S. 816 (1987).
 
 
 19
 The Secretary relies most heavily on the volume of Stewart's gross sales (approximately $109,000 in 1986 and $114,000 in 1987) as evidence that Stewart's activity must have been worth $300 per month to his business. These figures actually reflect sales of only two or three cars each month. Moreover, though the sales indicate "activity," maybe even "substantial activity," they do not show that it was "gainful" or that it was worth anything to the business. Stewart asserts, and the evidence convincingly shows, that his efforts by this point were actually harmful to the business, because profitable buying and selling requires judgmental skills that he lacked. His failure to make any income for five consecutive years back him up. It does not take good judgment to simply generate sales, and the dollar value of gross sales is more closely correlated to the value of the product than the seller's acumen. Stewart could have sold thirty pencils in a year, and generated far less gross revenue, or thirty houses, and generated much more; it makes no difference if his valiant but incompetent efforts run the business into the ground. The Secretary's reliance on the mere dollar amount of gross sales proves little, and does not constitute substantial evidence of gainful activity.
 
 
 20
 Stewart has been made a victim of his own work ethic. The same activity that the Secretary finds "gainful" failed to yield Stewart a dime for years and ultimately caused his disability insured status to expire. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 21
 REVERSED AND REMANDED.